# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

LAWRENCE M. BICKEL, on behalf    )
of himself and others similarly situated,    )
   )
      Plaintiff,    )
   )
      v.    )      CAUSE NO.: 1:08-CV-102-TS
   )
SHERIFF OF WHITLEY COUNTY    )
(in his official capacity),    )
   )
      Defendant.    )

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Motion for Partial Summary Judgment [DE 44], filed on June 10, 2009, and the Defendant's Cross-Motion for Summary Judgment [DE 55], filed on August 24, 2009.

## BACKGROUND

The Plaintiff, Lawrence M. Bickel, on behalf of himself and others similarly situated, has sued the Sheriff of Whitley County in his official capacity. The Plaintiff's suit, brought pursuant to 42 U.S.C. § 1983, alleges that the Sheriff engaged in a practice, procedure, or custom related to confinement at the Whitley County Jail that deprived him and others of their Fourth Amendment right to a probable cause determination within forty-eight hours of being arrested and detained without a warrant. The Plaintiff's lawsuit is based on the Supreme Court's decisions in *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) (holding that the Fourth Amendment affords persons who are arrested without a warrant the right to a prompt judicial determination of probable cause "as a prerequisite to extended restraint of liberty following arrest"), and *County*

*of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding that a "jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest, will, as a general matter, comply with the promptness requirement of *Gerstein*"). The Plaintiff has moved for partial summary judgment, asking the Court to determine as a matter of law that the Defendant's policy violates the Fourth Amendment. The Plaintiff contends that only a determination of damages remains for trial.

On August 24, 2009, the Defendant filed his Response in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment in Favor of Defendant [DE 55]. The Defendant does not dispute the facts presented by the Plaintiff and does not deny that detainees are only brought to court once a week (on Monday), regardless of when they are arrested. In response to the Plaintiff's Motion for Partial Summary Judgment and in support of his own Motion for Summary Judgment, the Defendant argues that the policy that the Plaintiff challenges as unconstitutional is not a policy of the Defendant, but of the Whitley County judges and prosecutor, and that the Sheriff had no authority to disregard these policies. The Defendant argues that the availability of hearings only one day a week is an extraordinary circumstance that justifies a delay of more than forty-eight hours, that the Sheriff cannot schedule judicial hearings on his own, and that he cannot be held liable for following procedures put in place by the county's judicial officers. In support of his claim that he was following judicial orders, the Defendant submits the affidavits of Whitley County Judges James Heuer and Michael Rush, and Whitley County Prosecutor Matt Rentshler. The affidavits set forth the procedures the judges instituted with regard to setting bail, holding initial hearings, and allowing detainees to be released on their own recognizance. The Defendant also argues that a pre-set

bond schedule, which offers detainees an opportunity to be released within forty-eight hours, distinguishes the Plaintiff's case from *County of Riverside.*

On August 26, the Plaintiff filed his Reply in Support of Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Response in Opposition to Defendant's Cross-Motion for Summary Judgment [DE 58]. The Plaintiff argues that all of the material facts are undisputed and that he is entitled to judgment as a matter of law on the issue of whether the Sheriff of Whitley County maintained an unconstitutional policy that deprived inmates of their constitutionally guaranteed right to a timely hearing. The Plaintiff discounts as illogical and circular the Defendant's argument that the state court's schedule of conducting initial hearings once a week is an extraordinary circumstance excusing delays. The Plaintiff argues that the Sheriff cannot abdicate his duty to ensure that detainees who are arrested without a warrant receive a probable cause hearing, noting that the Sheriff has the alternative to release a detainee who will not receive a hearing within forty-eight hours. The Plaintiff also responds to the Defendant's argument about a pre-set bond schedule, noting that it does not satisfy the requirements of an initial hearing to determine probable cause.

On September 18, the Plaintiff moved to strike the affidavits of the Whitley County judges as conclusory, unsupported by relevant facts, and containing inaccurate statements of the law. The Plaintiff argued that the affidavits conflicted with well-established Supreme Court precedent regarding the timing of determinations of probable cause. After briefing on the Motion to Strike was complete, the Court ruled that the Plaintiff did not state a proper basis to strike the affidavits because he merely opposed them "for their intended legal effect." (Nov. 6, 2009, Opinion and Order 3, DE 86, quoting Pl.'s Reply 1, DE 77; *see also* Pl.'s Mot to Strike 2, DE 69

(arguing that "to the extent that each of the three Affidavits impl[ies] that the Judges or the Prosecutor have the unlawful authority to direct the Sheriff to hold a pre-trial, pre-arraignment detainee more than forty eight hours in jail, the Affidavits must be stricken as irrelevant, conclusory and unsupported by fact or law").) The Court did not strike the affidavits, finding that they were based on personal knowledge, contained specific facts, and presented evidence that would be admissible at trial. The Court concluded that any implications and legal conclusions that could be derived from the facts presented in the affidavits would be better addressed by the Court when ruling on the summary judgment motions. Additionally, the Court noted that any portion of the affidavits that were not based on personal knowledge, did not contain specific facts to support a conclusion, or presented evidence that would not be admissible at trial, would be discounted for purposes of ruling on the summary judgment motions.

The parties filed the following additional briefs in connection with the summary judgment motions: the Plaintiff's Supplement Brief in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment [DE 60, filed on August 27]; the Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment [DE 62, filed on August 28 and identical to DE 58]; the Defendant's Reply in Support of Cross-Motion for Summary Judgment [DE 63, filed on September 11]; the Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment [DE 70, filed on September 18]; the Plaintiff's Supplemental Argument and Authority in Opposition to Defendant's Cross-Motion for Summary Judgment [DE 79, filed on September 25]; and the Defendant's Sur-Sur-Reply Brief in Support of Defendant's Cross-

Motion for Summary Judgment [DE 81, filed on October 15].[1]

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). With cross motions for summary judgment, the court construes all facts and inferences from the facts in favor of the party against whom the motion under consideration is made. *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

---

[1] The Plaintiff also filed Notice of Supplemental Authority [DE 82], which the Court ordered stricken on November 12 [DE 88].

# STATEMENT OF FACTS

On Thursday, March 30, 2006, the Plaintiff, Lawrence Bickel, was arrested without a warrant and processed for detention at the Whitley County Jail that evening. Within forty-eight hours of his arrest, bond was set in accordance with the bond schedule issued by the judges of the Whitley County Superior Court or Whitley County Circuit Court. Had the crime for which the Plaintiff was arrested not been listed on the bond schedule, the Sheriff would have contacted the appropriate judge to set the amount of bond. The Plaintiff was detained at the jail until his release on the afternoon of Monday, April 3. This is the same date that he was first scheduled to appear before a judge for an initial hearing. At no time during his detention from Thursday evening through Monday afternoon did a judicial officer make a determination of probable cause, either in the Plaintiff's presence or otherwise.[2]

The Sheriff of Whitley County does not have a written policy with respect to insuring that pretrial detainees be taken promptly before a magistrate for a judicial determination of probable cause. All detainees are transported to the Whitley County Superior Court or the

---

[2] A defendant does not have a right to be present at a probable cause determination, and the determination may be made *ex parte* upon hearsay and written testimony. *Gerstein*, 420 U.S. at 120; *see also Garcia v. City of Chi.*, 24 F.3d 966, 969 (7th Cir. 1994). It appears from the Affidavit of Matthew Rentschler, a Whitley County Prosecutor, that in some instances affidavits of probable cause are filed within forty-eight hours of an arrest. (Rentschler Aff. ¶ 5) ("Provided the arresting officer provides the paperwork to the prosecutor in a timely manner, and provided that court personnel are available, Affidavits for Probable Cause for warrantless arrests are filed within 48 hours of the arrest."). Rentschler's Affidavit, however, does not address whether an affidavit of probable cause was filed in the Plaintiff's case. In any event, the fact that a probable cause affidavit may have been filed within forty-eight hours indicates nothing about the timing of any judicial officer's review of the affidavit or determination regarding probable cause. The Defendant does not dispute that no such determination was made with regard to the Plaintiff, and it is this determination of probable cause that is relevant for purposes of the Fourth Amendment and the lawfulness of continued detention.

Whitley County Circuit Court on Monday, which is the only day that these courts hold initial hearings for criminal matters. According to the Affidavit of Judge Heuer, "The Sheriff of Whitley County seeks court approval prior to releasing any inmates on their own recognizance unless it is a medical emergency *and* the judge is unavailable." (Heuer Aff. ¶ 8, DE 57-2 (emphasis added).) Judge Rush states in his Affidavit that the Sheriff seeks such approval "unless it is a medical emergency *or* the judge is unavailable." (Rush Aff. ¶ 8, DE 57-3 (emphasis added).) Judge Rush also states that the Sheriff "may not release an inmate unless an Order to do so has been entered by the Court or court approval has been obtained." (*Id.*) (Judge Rush does not indicate the authority upon which this conclusion is based.) According to the Whitley County Prosecutor, the Sheriff seeks "court approval from the Prosecutor or the court prior to releasing any inmates on their own recognizance, unless it is a medical emergency" and, except in cases of medical emergency, "does not release inmates until ordered to do so by the Prosecutor's office or by the Court." (Rentschler Aff. ¶ 8–9, DE 57-4.)

## DISCUSSION

### A. Persons Subject to Suit Under Section 1983

Section 1983 imposes liability on any "person" who, while acting under color of state law, violates an individual's federally protected rights. 42 U.S.C. § 1983. The Plaintiff has sued the Sheriff of Whitley County in his official capacity, which is a suit against the governmental entity for which the Sheriff works. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Brandom v. Holt*, 469 U.S. 464, 471 (1985) (stating that victory in an "official-capacity" suit imposes liability on the entity that the official represents). Municipalities and other local government units are included in the persons to whom § 1983 liability applies. *Monell v. Dep't of Soc. Servs.*

*of City of New York*, 436 U.S. 658, 690 (1978) (holding that a local government is liable under § 1983 for its policies that cause constitutional deprivations).

Article 6, § 2 of the Indiana Constitution establishes the office of the sheriff, and county commissioners do not control the actions of the sheriff. *See Radcliff v. County of Harrison*, 627 N.E.2d 1305, 1306 (Ind. 1994); *Robins v. Harris*, 740 N.E.2d 914, 919 (Ind. Ct. App. 2000), ("The law is well-settled that county commissioners do not have control over the acts of a sheriff."), *aff'd in part and vacated in part on other grounds by Robins v. Harris*, 769 N.E.2d 586 (Ind. 2002). The sheriff's department is the entity that is sued when a sheriff in Indiana is sued in his official capacity. *See Burton v. Lacy*, No. 1:07-cv-918, 2008 WL 187552, at *5 (S.D. Ind. 2008) ("[N]aming the Sheriff in his official capacity is the same thing as bringing suit against the Sheriff's Department."); *Argandona v. Lake County Sheriff's Dep't*, No. 2:06-cv-259, 2007 WL 518799, at *3–5 (N.D. Ind. Feb. 13, 2007) (providing comprehensive discussion of the legal status of a sheriff in Indiana as a separate municipal entity subject to suit under § 1983). Accordingly, the Plaintiff's suit against the Whitley County Sheriff in his official capacity is a suit against the Whitley County Sheriff's Department.

**B.    Fourth Amendment Seizures**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const, Amend. IV. Under the Fourth Amendment, a state "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, . . . made by a judicial officer either before or promptly after arrest." *Gerstein*, 420 U.S. at 125. "[A] policeman's on-the-scene

assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate." *Id.* at 104, 113–14. Thus, although warrantless arrests are permitted, the Fourth Amendment requires every local government entity to provide "prompt" judicial determinations of probable cause "as a prerequisite to extended restraint of liberty following arrest." *Id.* at 113. In establishing a "practical compromise" between the rights of individuals and the realities of law enforcement, the Court recognized that the "consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's family, interrupt his source of income, and impair his family relationships." *Id.* at 114. The Supreme Court left it to individual states to integrate prompt probable cause determinations into their differing systems of pretrial procedures. *Id.* at 123–24. In *County of Riverside*, the Supreme Court provided more guidance regarding how much delay could be considered "prompt," holding that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest, will, as a general matter, comply with the promptness requirement of *Gerstein*," and be immune from systemic challenges. *Id., 500 U.S. at 56 (stating that the Court was providing "some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds").

It is undisputed that the Plaintiff was arrested without a warrant, that he did not receive a probable cause hearing or a determination of probable cause within forty-eight hours of that arrest, and that he was detained at the Whitley County Jail for three and one-half days before being released. It is also undisputed that the only day of the week that the Sheriff transports a

detainee to court for an initial hearing is on Monday because that is the only day that the courts in Whitley County conduct such hearings.

In defense of what appears to be a violation of the right to a prompt judicial determination of probable cause as expounded in *Gerstein* and *County of Riverside*, the Defendant makes the following arguments: (1) the courts' schedule was an extraordinary circumstance that justified the delay; (2) the policy at issue is that of the courts, not the Sheriff, and he cannot be held liable for the policy of the courts; (3) the Sheriff had no authority to schedule court hearings or to release detainees absent court approval; and (4) a written bond schedule satisfies the requirements of the Fourth Amendment. Excluding the argument regarding bond, the Defendant's argument is essentially that, even though the Plaintiff was detained beyond the Fourth Amendment's outer limit for warrantless arrests, the Sheriff is not legally responsible because he was only following the orders of other government officials, which he contends he cannot disregard. The Plaintiff argues that the Defendant's position is without merit because the Sheriff has the authority to release individuals who have been in his custody for longer than forty-eight hours without a judicial determination of probable cause and because neither the judges nor the prosecutor can require the Sheriff to violate detainees' rights.

## C.    Official Capacity Suits

To establish liability under § 1983 against the Sheriff's Department, the Plaintiff must show that "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the [Sheriff's Department], which (3) was the proximate cause of his

injury." *Ienco v. City of Chi.*, 286 F.3d 994, 998 (7th Cir. 2002). The Court will take up these elements in turn and, in doing so, will address the arguments that the Defendant lodges in response to the Plaintiff's claim.

1.      *Violation of a Constitutional Right*

It is undisputed that the Plaintiff was detained longer than forty-eight hours after his arrest without there being any judicial determination of probable cause, either before his arrest or after.

The Supreme Court held in *Gerstein* that the Fourth Amendment's shield against unreasonable seizures requires a prompt judicial determination of probable cause following an arrest made without a warrant and ensuing detention and *County of Riverside* established that "prompt" generally means within forty-eight hours of the warrantless arrest. *Powell v. Nevada*, 511 U.S. 79, 80 (1994). When an arrestee is detained beyond forty-eight hours without being given a judicial determination of probable cause, the burden is on the government to "demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *County of Riverside*, 500 U.S. at 57. Regarding extraordinary circumstances,

> [t]he fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.

*Id.* Conversely, the mere fact that a person is given a determination within forty-eight hours after being arrested does not mean that "the probable cause determination in a particular case passes constitutional muster." *Id.* at 56. Such a hearing may nonetheless violate the constitution "if the

arrested individual can prove that the probable cause determination was delayed unreasonably."
*Id.* In evaluating such allegations of unreasonable delay, courts must allow "a substantial degree of flexibility," being mindful of practical realities, such as unavoidable delays in transportation, handling late night bookings when no magistrate is readily available, and obtaining the presence of an arresting officer who might have other duties. *Id.* at 56–57 (providing examples of the practical realities that a court must consider in evaluating whether a determination provided within forty-eight hours was nonetheless unreasonable). The Supreme Court provided examples of unreasonable delay: "delays for purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.* at 56.

The Defendant contends that the county courts' practice of holding initial hearings only one day a week creates an extraordinary circumstance that justifies the otherwise unconstitutional delay. The Sheriff states that his policy was to take detainees before a judge for a probable cause hearing at the first possible opportunity, and neither the Defendant nor the Plaintiff contend that the Sheriff had the ability to schedule court dates. However, this does not qualify as an extraordinary circumstance. It is the continued detention by the Sheriff's Department that is the violation, and the reasoning of the courts regarding the scheduling of hearings only once per week is beside the point. The practice of bringing detainees to court one day a week (regardless of the reason) does not explain or justify the Defendant's practice of detaining them until their court date if he had available to him the option to release them. The Defendant's argument is, in reality, one that challenges whether the Defendant's policy was the proximate cause of the deprivation, but this argument will be discussed later in this Opinion.

The Defendant's assertion that providing an opportunity to be released on bond satisfies

the requirements of the Fourth Amendment is not convincing. A pre-set written bond schedule is not a judicial determination of probable cause. For those individuals who cannot pay the bond, the restraint of their liberty continues without determinations by neutral magistrates that their arrests were predicated on probable cause to believe that they had committed the crimes for which they were arrested.

For these reasons, the Court finds that the Plaintiff suffered a deprivation of a his Fourth Amendment right against unreasonable seizure.

## 2.    *Custom or Policy*

The Defendant does not seriously contest this element. In response to an interrogatory request regarding the policies and procedures that were in place in March and April 2006, the Defendant answered as follows:

> a. All pre-trial detainess were taken to the appropriate court on the date and time set by that court, on the next court date following their arrest.
>
> b. All Sheriff's department person [sic] obeyed the schedules which were set by the court to which the case was assigned.
>
> c. Whitley Circuit Court holds criminal initial hearings on Mondays at 9:00 a.m. and Whitley Superior Court holds them on Mondays at 1:30 p.m., unless Monday is a holiday, in which case the hearings are held on the next scheduled court date. This policy is followed by all deputies and confinement officers. Detainees are brought to court on the first court date following their arrest.

(Pl.'s Br., Ex. 6, Def.'s Amd. Answers to Pl.'s First Set of Interrogs. No. 2, DE 45-7; *see also id.* Interrog. No. 4 (stating that all Sheriff's Department personnel followed the schedules set by each court and that this "procedure has been in place for decades").) The Defendant contends that, in accordance with judicial orders, he does not release an inmate on his own recognizance

unless he has first obtained court approval, with exceptions for medical emergencies and judge unavailability. (The Defendant does not indicate how often (if ever) or under what circumstances he seeks court approval to release detainees who cannot post bond.)

The undisputed evidence supports the conclusion that it was the practice of the Sheriff's Department to detain persons arrested without a warrant until their first available court date and not to release them unless they first posted bond in accordance with a predetermined bond schedule. For purposes of establishing a municipal policy or custom, this constitutes both a widespread practice of the Sheriff's Department, *see Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 912 (7th Cir. 1999) (explaining that one variant of a "policy" is a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law), and the act of the ultimate municipal decision-maker, *see Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999) (holding that because Indiana law provides that it is the sheriff's duty to take care of the jail and its prisoners without any further scrutiny or ratification by the county, "the sheriff serves as the county's official decision-maker in matters involving the county jail"); Ind. Code § 36-2-13-5 (describing the powers and duties of the sheriff). The Plaintiff was confined for more than forty-eight hours after his warrantless arrest as a result a the widespread practice of the Sheriff's Department. In fact, any person who was arrested from Tuesday through Saturday morning and did not post bond would likely remain incarcerated for more than forty-eight hours without a judicial determination of probable cause.[3] The Plaintiff is not attempting to hold the Sheriff's

---

[3] For a case presenting a similar violation, *see Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003), which held that a sheriff's policy of detaining persons who could not immediately post bail until the time of their initial appearance, which as a matter of course was often on Tuesday morning and was never on weekends or holidays, was the "very sort of 'policy or custom' referred to by *Monell*."

Department liable "*solely* because it employs a tortfeasor—or, in other words . . . on a *respondeat superior* theory," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), and he has satisfied the second element of his § 1983 claim against the Sheriff's Department.

Although the Defendant argues that its "policy was to follow the orders of the judges of his County rather than violate them" (Def.'s Reply 3, DE 63), and to "follow the court's orders with regard to bond schedule and release of prisoners and to take prisoners to court each Monday" (*id.* 5), the Defendant does not appear to (and can hardly) assert that his actions were not pursuant to a widespread practice or that he was not a final policy-maker with respect to the jail. Rather, his argument is that the moving force behind any deprivation of the Plaintiff's constitutional rights was the judicial scheduling policy—not his practices. *See, e.g.,* Def.'s Sur-Sur-Reply 2–3, DE 81 (recognizing that "under state statute" "the sheriff controls pre-arraignment detention of inmates in the jail" and that the jail is "the domain of the sheriff," but arguing that he had no authority to violate judicial mandates). This argument is addressed in the next section.

### 3.    *Proximate Cause*

A governmental body's policies must be the moving force behind the constitutional violation before a court can impose liability. *Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 457 (7th Cir. 2009). Here, the relevant entity is the Sheriff's Department. The relevant constitutional right is the Fourth Amendment's protection against unreasonable seizures, specifically, the right not to be detained for not more than forty-eight hours after being arrested without a warrant unless a judicial officer has determined that probable cause existed to believe

that the person committed a crime. *Gerstein*, 420 U.S. at 114 (holding that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following [warrantless] arrest"); *Haywood v. City of Chi.*, 378 F.3d 714, 717 (7th Cir. 2004) (stating that although Haywood was arrested lawfully, "he could not, consistent with the Fourth Amendment, be continued in custody beyond 48 hours . . . unless a judicial officer determined there was probable cause to believe that he had committed a crime"); *Chortek v. City of Milwaukee*, 356 F.3d 740 (7th Cir. 2004) (framing *Gerstein* issue as an "excessive length of detention" claim).

The Defendant argues that the Plaintiff's failure to be brought to court within forty-eight hours of his warrantless arrest was "caused by the fact that there was no available court to which to go. Surely the law does not contemplate imposing liability on this Defendant, who had absolutely no control over the constitutional violation of the Plaintiff, if in fact there was one, and has no ability going forward to prevent it from happening again." (Def.'s Resp. 8, DE 55.) This argument focuses on only one aspect of the Sheriff's duty—to bring detainees before a judicial officer— and the Plaintiff has not suggested that the Defendant had the authority to schedule court hearings. The real dispute is over the Defendant's authority to release inmates. The Defendant argues that he does not have the discretion to release inmates on their own recognizance if they cannot be brought to court within forty-eight hours because, in Whitley County, the Sheriff has been instructed to seek approval from the prosecutor or the Whitley County Superior or Circuit Courts before releasing any inmates on their own recognizance absent a medical emergency.

The Defendant cites *Coleman v. Frantz*, 754 F.2d 719 (7th Cir. 1985), in support of his

claim that he had no choice but to follow the judicial policies in effect in Whitley County. In *Coleman*, the plaintiff was detained for eighteen days after an arrest by warrant and was not provided a first appearance with the court. The Seventh Circuit held that the sheriff's conduct violated the plaintiff's substantive due process rights, 754 F.2d at 723–24, but that the sheriff was protected by qualified immunity because he reasonably attempted to fulfill his duties and because the constitutional right "to a 'first appearance' before a judicial officer following arrest pursuant to a valid warrant based on a determination of probable cause, setting of bond and notification of charges was not 'clearly established' within the meaning the Supreme Court has given that term," *id.* at 731.[4]

The Defendant points to language in *Coleman* referring to the sheriff as a "lower level public official" and noting that the sheriff "had no capacity or legal obligation to schedule court dates or to force the prosecutor's office to schedule them." (Def.'s Resp. 5, DE 55, quoting *Coleman*, 754 F.2d at 728 & n.10 (emphasis omitted).) There is no dispute that the Sheriff cannot schedule court dates and, as already noted, the Plaintiff does not argue otherwise. However, this reality does not address the real issue: whether the Defendant had authority to release detainees who were arrested and detained without a judicial finding of probable cause. *Coleman* does not address this issue. Judge Cudahy, in his concurrence in *Coleman*, touched on the duty of the sheriff to release a prisoner when he framed the duty at issue as "the duty either to take the prisoner before a magistrate or to release him." 754 F.3d at 731 (Cudahy, concurring).

---

[4] The Defendant acknowledges that he cannot claim qualified immunity because he has not been sued in his personal capacity. *See Graham*, 473 U.S. at 167 ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.") However, he contends that the reasoning in *Coleman* is nonetheless instructive and highlights that a question exists whether the Defendant had the authority to disregard the orders and policies of the county courts.

Judge Cudahy agreed with the majority that the sheriff did all he could to fulfill his duty to take the plaintiff promptly before the court because without the support of the prosecutor or acquiescence of the judicial officer there was nothing more he could do with regard to this aspect of his duty. *Id.* He opined, therefore, that the more plausible theory may have been based on the sheriff's "*alternative duty to release the prisoner if he could not be brought before a judicial officer.*" 754 F.2d at 731 (Cudahy, concurring) (emphasis added). Judge Cudahy acknowledged that even had this theory been presented, there was no sufficiently clear and established duty known to the sheriff, at the time, to release a prisoner under circumstances when it was impossible to present him to the court. *Id.*[5] Judge Cudahy concluded, "[i]n light of the court's decision today, of course, there should no longer be any doubt about this aspect of the duty." *Id.*

Here, the Sheriff cannot fairly rely on the language from *Coleman*. The focus of the majority opinion was the practical reality already acknowledged here—that the Sheriff does not have the legal authority to schedule court dates. Only Judge Cudahy's concurrence and Judge Gordon's dissent explicitly discussed a sheriff's duty to release an inmate when he could not be promptly presented to the court, with Judge Cudahy concluding that the duty, although not clearly established at the time, was no longer in doubt, and Judge Gordon stating that the duty was clearly established. In addition, unlike the constitutional right at issue in *Coleman*, a detainee's right to a probable cause hearing as a prerequisite to continued detention has been unambiguously established by the Supreme Court in *Gerstein* and *County of Riverside*. *See*

---

[5] On this point Judge Cudahy disagreed with Senior Judge Myron L Gordon's dissenting opinion. Judge Gordon wrote that because the sheriff, and not the prosecutor, held the keys to the jail cell and had sole custody of the plaintiff, that the sheriff was responsible for the prolonged detention. 754 F.2d at 732 (Gordon, dissenting) ("The sheriff must be held accountable for either securing a court appearance for the arrestee or, at some reasonable point, releasing him.").

*Coleman*, 754 F.2d at 730 (stating that the right recognized in *Gerstein* was not at issue because the plaintiff received a valid determination of probable cause by a judicial officer). "Because the Supreme Court itself has spoken to the question of the time within which the custodian must act to establish basic probable cause, see *Riverside*, it follows that any official policy must meet that standard." *Luck v. Rovenstine*, 168 F.3d 323, 327 (7th Cir. 1999) (holding that "a policy under which the sheriff holds onto a suspect until the arresting agency tells him to release the person is in terms a violation of the Fourth Amendment"). *See also Armstrong v. Squadrito*, 152 F.3d 564, 578 (7th Cir. 1998) ("In a constitutional sense, how much more basic could it get—jails cannot confine people without the authority to do so.").

Although the Defendant acknowledges that he is not entitled to quasi-judicial immunity because it only applies to persons sued in their individual capacities,[6] he uses the doctrine as an analogy to argue that he lacked discretion to release individuals who where being detained beyond the *Gerstein* limits. The Defendant maintains that "consideration of the quasi-judicial immunity doctrine is important, insofar as it reflects the weight to be given to a judicial order, and the protection it affords to those judicial underlings who are required to enforce them."

---

[6] The Seventh Circuit discussed the rationale for not granting immunity to governmental units in *Hernandez v. Sheahan*:

> Official immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines. That justification does not apply to suits against units of state or local government, which can tap the public fisc. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), holds that governmental bodies whose own policies are unconstitutional cannot obtain a derivative benefit from the qualified immunity that may protect their employees.

455 F.3d 772, 776 (7th Cir. 2006) (holding that quasi-judicial immunity did not apply to suit against the sheriff in his official capacity).

(Def.'s Reply 6, DE 63.) The Defendant argues that the doctrine of quasi-judicial immunity "establishes the lack of merit in Plaintiff's argument that the sheriff had the authority to disregard [the judicial policies of the courts in Whitley County] and implement his own in direct contradiction." (*Id.*)

The primary function of quasi-judicial immunity is to protect judicial or quasi-judicial decision making, which can either be discretionary conduct by a quasi-judicial body (like a parole board) or conduct by persons who are integral to the judicial process but whose conduct is not "functionally comparable" to a judge's (like a law enforcement officer enforcing a foreclosure judgment). *Richman v. Sheahan*, 270 F.3d 430, 436 (7th Cir. 2001). The reason such immunity has been extended to law enforcement officials who engaged in conduct that was specifically ordered by a judge was "not primarily to protect the enforcement function performed by the deputies, but rather to protect the judicial decision-making function by discouraging collateral attacks and encouraging appeals." *Id.* at 437. It also "avoids the 'untenable result' of requiring 'sheriffs and other court officers who enforce properly entered judgments pursuant to facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them.'" *Id.* (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986)).

Even if the purpose of affording immunity to certain judicial and quasi-judicial acts could be extended to a suit against a government official sued in his official capacity, this would not be a case for its application. The Defendant contends that, although control of the jail and pre-arraignment detention is within his domain, he was faced with "judicial mandates." (Def.'s Sur-Sur-Reply 2–3, DE 81.) However, he does not designate any order of the Whitley County courts

that the Defendant was executing when he detained arrestees until Monday. In other words, he does not present evidence of a facially valid court order that he would have been violating had he released detainees who did not (or were not going to) receive a prompt judicial determination of probable cause. Judge James Heuer, the Whitley County Circuit Court Judge, states in his affidavit that "[t]he Sheriff of Whitley County seeks court approval prior to releasing inmates on their own recognizance unless it is a medical emergency or the judge is unavailable." (Heuer Aff. ¶ 8, DE 57-2.) The Judge of the Whitley County Superior Court, Judge Michael Rush, similarly states that the Sheriff seeks approval unless there is a medical emergency and the judge is unavailable. Judge Rush also states that, subject to these exceptions, the Sheriff "may not release an inmate until an Order to do so has been entered by the Court or court approval has been obtained." (Rush Aff. ¶ 8–9, DE 57-3.) These affidavits do not help the Defendant's case. The conclusion in Judge Rush's affidavit that the Defendant "may not release an inmate" is a legal conclusion. Even if it is not intended as a legal conclusion, it is nonetheless a conclusion that is not supported by specific facts. Neither affiant states that he issued an order that required the Sheriff, either generally or in the Plaintiff's case, to seek approval before releasing a detainee. If the instruction to seek approval was communicated by means other than a court order, the affiants do not identify it. Contrary to the Defendant's assertion, the evidence does not support a conclusion that the Sheriff would have been subject to contempt of court if he released a detainee for which no judicial determination of probable cause had been made within forty-eight hours of his warrantless arrest.

Moreover, even if a court order existed, the affidavits do not suggest that it prohibited the Defendant from releasing an inmate expected to be detained for more than forty-eight hours

before a judicial determination of probable cause. Rather, they indicate that the Defendant could release detainees as long as he first sought court approval. Neither affiant states that the circumstances under which the Sheriff could seek approval was limited. Thus the decision when to seek approval to release an inmate was assigned to the Sheriff. The Seventh Circuit has refused to extend quasi-judicial immunity in cases where the manner in which a judge's order was executed caused the harm at issue. *See Hernandez,* 455 F.3d at 776 (stating that deputies were not entitled to quasi-judicial immunity when they detained the wrong person wanted on an arrest warrant because the judge's order awarding custody to the sheriff's department did not forbid inquiries into the detainee's identity); *see also Richman v. Sheahan*, 270 F.3d 430, 437 (7th Cir. 2001) (holding that quasi-judicial immunity did not apply where the deputies were being sued only for the manner in which they enforced the judge's in-court order to restrain the plaintiff's son). Here, much like in *Hernandez*, a general court directive not to release a detainee without first obtaining approval would not be dispositive because it would not forbid the Sheriff from seeking release and because it would not cause him to be "put to a choice between penalties for contempt of court and damages under § 1983." 455 F.3d at 776.

The Defendant argues that in addition to orders of the Whitley County judges preventing him from releasing detainees, common sense also prevented him from taking such action. The Defendant maintains that the Plaintiff's suggestion that the Sheriff release all persons arrested on Monday afternoon through Saturday "would result in criminals in Whitley County being able to commit a crime of their choosing, irrespective of the gravity of the crime, with the knowledge that they would be required to spend no more than 48 hours in jail . . . with absolutely no assurance that they would ever return to court to answer to the murder charge or other Class A

felony which they may have committed." (Def.'s Reply 7) (arguing that the court "cannot accept Plaintiff's argument when it would result in such an untenable and unthinkable scenario"). Even assuming that warrantless arrests sometimes involve such serious felonies, this argument presents a false dilemma by presenting only two options: an unconstitutional continued deprivation of liberty; or release on the detainee's own recognizance. These options overlook that a judicial officer could make a determination of probable cause within forty-eight hours of a suspected felon's arrest, which would then support his continued detention if probable cause was found. The Sheriff would have no constitutional obligation to release an arrestee for whom a judicial officer had found probable cause to believe had committed a crime. The Defendant rejects this option by expressing doubt that the Sheriff's release of inmates who did not have a timely hearing would cause the judges in Whitley County to modify their Monday-only policy because they are entitled to absolute judicial immunity. However, this expression of doubt does not consider the "common sense" arguments the Defendant already made against releasing persons suspected of serious crime on their own recognizance, or assumes that the judges would simply not find these reasons compelling enough to take action to avoid such releases. In any event, while the possibility that detainees may not return to court if they are released on their own recognizance may explain the Sheriff's actions, it does excuse the violation of the Plaintiff's Fourth Amendment right against unreasonable seizure.

With regard to the Whitley County Prosecutor's role, the Defendant does not provide any authority that gives the prosecutor the legal right to direct the Sheriff to detain an individual for any period beyond forty-eight hours before being taken before a judicial officer for a determination of probable cause. A prosecuting attorney's powers and duties as set forth in

Indiana Code § 33-39-2-1 *et seq.* do not touch on the operation of the jail or the detention of arrestees. The sheriff's statutory duties and obligations include the following:

> (1) arrest without process persons who commit an offense within the sheriff's view, take them before a court of the county having jurisdiction, and detain them in custody until the cause of the arrest has been investigated; [and]
>
> * * *
>
> (7) take care of the county jail and the prisoners there.

Ind. Code § 36-2-13-5(a). Additionally, Indiana law provides that "[a] person arrested without a warrant for a crime shall be taken promptly before a judicial officer: (1) in the county in which the arrest is made; or (2) of any county believed to have venue over the offense committed; for an initial hearing in court." Ind. Code § 35-33-7-1(a).

Case law interpreting the role of sheriffs in Indiana does not support the Defendant's arguments pertaining to his limited authority to act concerning the detention of detainees in the county jail. In *Luck v. Rovenstine*, the plaintiff sued the sheriff in his personal and official capacities when he was jailed for a week without a probable cause hearing following his warrantless arrest. Regarding the official capacity claim, the sheriff acknowledged his status as a municipal decision maker and the jail's caretaker. *Luck*, 168 F.3d at 326 ("Indiana Code § 36-2-13-5(a) provides without further qualification that it is the sheriff's duty to take care of the jail and its prisoners. Thus, the sheriff's actions are not subject to any further scrutiny or ratification by the county, and the sheriff serves as the county's official decision-maker in matters involving the county jail."). However, the sheriff argued that he had no duty to ensure that detainees arrested without a warrant received a probable cause hearing or gained release. *Id.* (stating that the sheriff "believes that someone else, perhaps the arresting officer or the prosecutor, is

responsible for the period of confinement between a warrantless arrest and a judicial determination of probable cause"). The court found "unconvincing" the sheriff's "attempt to shrug off his federal constitutional responsibilities," stating that, "[i]n the final analysis, the sheriff is the custodian of the persons incarcerated in the jail, and as such, it is he who is answerable for the legality of their custody." *Id.* (citing *Armstrong*, 152 F.3d at 579, for the principle that a sheriff's office cannot abdicate its own responsibility for the fate of pretrial detainees). The Defendant makes a similar argument in this case to defend his position:

> Plaintiff asserts . . . that the judges' consent to release inmates was not needed, since the sheriff controls pre-arraignment detention of inmates in the jail. While that may be true under state statute, under judicial order of Whitley County, it is not. There can be no doubt that the criminal courts are the domain of the judges, and to a lesser extent, the county prosecutor. Criminal courts are not the domain of the sheriff, although the jail is. Here, the sheriff was faced with judicial mandates, namely the issued bond schedule for inmates in the jail, and instructions that absent court approval or medical emergency, he is not to release any inmates. It is Defendant's contention that he had no authority to violate this policy.

(Def.'s Sur-Sur-Reply 2–3, DE 81.)

The Seventh Circuit disposed of this argument is *Luck* when it stated that the sheriff "chose to pursue a deliberate course of action that gave greater weight to avoiding conflict with other agencies than it did to the preservation of detainees' constitutional rights." 168 F.3d at 327. Whatever the Sheriff's reasons, which are ultimately not relevant in assessing the reasonableness of a seizure under the Fourth Amendment, *cf. Graham v. Connor*, 490 U.S. 386, 397–99 (1989), his practice did not account for the limits on how long the jail could constitutionally detain persons who had been arrested without a warrant. His conduct caused an "extended restraint of liberty." *Gerstein*, 420 U.S. at 114.

There is no genuine issue of material fact as to whether the Defendant's policy was the

moving force behind the deprivation of the Plaintiff's constitutional rights to a prompt judicial determination of probable cause. Had the Defendant acted according to the Fourth Amendment's dictates, the Plaintiff would have been released when no judicial officer found probable cause to continue to detain him beyond the presumptively reasonable forty-eight-hour period.

### D.      Damages

In his Complaint, the Plaintiff seeks compensatory damages, a declaratory judgment that the Sheriff's treatment of pre-trial detainees violated the Fourth Amendment, and injunctive relief, "i.e., that the Sheriff implement a constitutionally adequate policy protecting the rights of pre-trial detainees to be taken promptly before a Judge or Magistrate consistent with the Fourth Amendment of the United States Constitution." (Pl.'s Compl. 3, DE 1.) The Plaintiff also seeks reasonable attorney's fees and costs.

Because the Plaintiff was not confined in the Whitley County Jail when he filed his Complaint, he is not entitled to declaratory or injunctive relief. However, the Plaintiff may still be entitled to damages. *See, e.g., Lopez v. City of Chi.*, 464 F.3d 711, 722 (7th Cir. 2006) (remanding duration of confinement claim to district court where the plaintiff could recover damages and citing *Carey v. Piphus*, 435 U.S. 247, 254–55 (1978), for the proposition that "compensatory damages are the norm when a plaintiff prevails on a § 1983 claim for unconstitutional violations and can prove actual damages"); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1480–83, 1486 (9th Cir. 1993); *Rivas v. Freeman*, 940 F.2d 1491 (11th Cir. 1991). The issue of damages suffered as a result of this Fourth Amendment violation is a matter for another day.

**CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment [DE 44] is GRANTED, and the Defendant's Cross-Motion for Summary Judgment [DE 55] is DENIED. By separate order, the Court will schedule a telephonic status conference to discuss the damages portion of the Plaintiff's case.

SO ORDERED on March 26, 2010.

 s/ Theresa L. Springmann      
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
