UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LAWRENCE M. BICKEL, on behalf of himself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO.: 1:08-CV-102-TLS ) |
| SHERIFF OF WHITLEY COUNTY (in his official capacity), | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Having conducted a fairness hearing in this class action, the Court now provisionally approves the settlement agreement, subject to supplementation of the record as set forth herein. This Opinion and Order will give the parties an opportunity to supplement the record or correct any misstatements by the Court or parties when filing a motion for final approval.

## BACKGROUND

The Plaintiff, Lawrence M. Bickel, on behalf of himself and others similarly situated, sued the Sheriff of Whitley County in his official capacity pursuant to 42 U.S.C. § 1983. The Plaintiff alleged that the Sheriff engaged in a practice, procedure, or custom related to confinement at the Whitley County Jail that deprived him and others of their Fourth Amendment right to a probable cause determination within forty-eight hours of being arrested and detained without a warrant, based on the holdings in *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) (holding that the Fourth Amendment affords persons who are arrested without a warrant the right to a prompt judicial determination of probable cause "as a prerequisite to extended restraint of liberty

following arrest") and *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding that a "jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest, will, as a general matter, comply with the promptness requirement of *Gerstein*").

On March 26, 2010, the Court granted the partial summary judgment in favor of the Plaintiff, determining that the Defendant's policy violated the Fourth Amendment as a matter of law. Additionally, the Court certified a Rule 23(b)(3) class, defined as all persons who were arrested without a warrant from March 30, 2006, to present, and detained in the Whitley County Jail for more than forty-eight hours from the time of their arrest without a judicial determination that probable cause existed to continue to detain them. The Court determined that the class could seek damages for unconstitutional detentions in the Whitley County Jail that resulted from a confinement policy of the Sheriff, particularly, his policy of detaining (and not releasing or seeking and obtaining approval to release) persons arrested without a warrant when no judicial officer found probable cause to continue to detain them beyond the presumptively reasonable forty-eight-hour period announced by the Supreme Court in *County of Riverside v. McLaughlin*.

In October 2014, the Named Plaintiff, Lawrence Bickel, on behalf of himself and the Settlement Class, and the Defendant, Whitley County Sheriff, entered into a Class Action Release and Settlement Agreement. The Settlement requires the Defendant to pay $725,000 into a settlement fund to cover administration and notice costs, attorneys' fees and costs, the Named Plaintiff's incentive award, and claims payments. The Defendant was credited $3,335.85 for a previous payment of costs of publication of the class notice, leaving a total of $721,664.15 to be paid by Defendant into the settlement fund. After a reduction of costs for sending the mailed notice and administering the fund, an incentive award not to exceed $10,000, and for attorneys'

fees of about $317,000 plus costs, the settlement funds would be distributed to the Settlement

Class Members, defined as

> All individuals arrested without a warrant from March 30, 2006 through
> December 31, 2009, and who were booked and/or placed into the Whitley County
> Jail, and who were not brought before a judicial officer within forty-eight (48)
> hours after their arrest for a judicial probable cause hearing, and who were
> detained by the Whitley County Sheriff in excess of forty-eight (48) hours after
> their arrest.

(Settlement Agr. ¶ 9.a, ECF No. 191-2.) One person opted out of the class. The Settlement Class is divided into two groups: (I) Bickel and other class members for loss of liberty, and; (II) the seven individuals who submitted a claim form for emotional distress, mental anguish, loss of employment or wages, or other special damages. The anticipated recovery for the members of Settlement Class I is about $43.00 per hour of over detention. The members of Settlement Class II will have an opportunity to identify and substantiate injuries and damages to a special master.

The Court preliminarily approved the Settlement on November 3, 2014. The Court confirmed Christopher C. Myers and Ilene M. Smith as Class Counsel for the Class Representative and the Class. The Court approved Homefront Legal Services, LLC, 11805 North Pennsylvania Street, Carmel, Indiana, as the Claims Administrator.

The Court conducted a Fairness Hearing on Wednesday, March 18, 2015, to consider: (i) the fairness, reasonableness, and adequacy of the settlement; (ii) whether the Final Order of Approval of Settlement, attached as Exhibit E to the Settlement Agreement, shall be entered in its current or some modified form; and (iii) the application of Class Counsel for attorney's fees and costs (the Fee Petition).

## DISCUSSION

**A.     Notice**

Rule 23 requires that the Class Members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Reasonable notice is required to all class members who would be bound by a proposed settlement. Fed. R. Civ. P. 23(e)(1).[1] The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class. *See* Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist & Plain Language Guide* 3 (2010) ("It is reasonable to reach between 70–95%. A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%.").

The Class contains 243 individuals. A Class and Settlement Notice was mailed to the last known address of each individual, as listed in the Whitley County arrest records. Prior to mailing, the Claims Administrator attempted to find updated addresses and to verify the accuracy of the addresses of all potential Settlement Class members. If, as a result of the mailing, the Postal Service provided a forwarding address, but the Mailed Notice was not forwarded by the Postal Service, the Claims Administrator re-mailed the Mailed Notice to the forwarding address. If the Mailed Notice was returned as undeliverable a second time, no further mailing was attempted. The Claims Administrator also issued a Published Notice in *The Post & Mail*, a newspaper serving the Whitley County area.

---

[1] According to the Settlement Agreement, the final order and judgment will be binding on all pending and future lawsuit or other proceedings encompassed by a release that is maintained by or on behalf of the Named Plaintiff and all other members of the settlement class, and those members will be barred from asserting any released claims. (Settlement Agr. ¶¶ 29–32, ECF No. 191-2.)

The procedure implemented by the plan administrator was appropriate. *See Jones v. Flowers*, 547 U.S. 220 (2006) (stating that the plan should take steps to update addresses before mailing and provide for re-mailing notices to better addresses when returned as undeliverable). However, before the Court finds that due process and the notice requirements of Rule 23 have been satisfied, it directs Class Counsel to identify how many members, or what percentage, of the Class received Notice through the Mailed Notice. If that number is below 70%, counsel should explain why the process was, nonetheless, the best notice that is practicable under the circumstances.

**B.     Adequacy of the Settlement Agreement**

A district court must scrutinize and evaluate a class action settlement to determine whether it is "fair, reasonable, and adequate." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2)). In making these determinations, the court considers five factors: (1) the strength of plaintiffs' case compared to the defendants' offered settlement amount; (2) the likely complexity, length, and expense of the litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

**1.     *Strength of Plaintiff's Case Compared to Defendant's Offered Settlement***

In the Joint Brief in Support of Reasonableness, Fairness, and Adequacy of the Settlement Agreement and Distribution of Settlement Proceeds [ECF No. 192], the parties

5

recognize that the first and most important consideration is the strength of the Plaintiff's case compared to the value of the settlement. They also stated that, in considering the strength of the Plaintiff's case, the Court is to quantify "the net expected value of continued litigation to the class by estimating the range of possible outcomes." *In re AT&T Mobility Wireless Date Services Litig.*, 270 F.R.D. at 346-47; *Synfuel*, 463 F.3d at 653. The parties submit that the calculation of loss of liberty, and the calculation of emotional distress and special damages, is extremely subjective. They also recognize the range of possible outcomes includes a number of highly unfavorable outcomes.

The Court directs Class Counsel to supplement the record. Although assigning a monetary amount to loss of liberty is subjective and speculative, and the value of immediate recovery outweighs mere possibility of future relief, the Seventh Circuit requires a more precise analysis. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) (stating that the district court should have made a greater effort to quantify the net expected value of continued litigation to the class, which required estimating the range of possible outcomes and ascribing a probability to each point on the range); *see also Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014) (stating that the district court should have estimated the likely outcome of a trial in order to evaluate the adequacy of the settlement).

> A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes. Still, much more could have been done here without (what is obviously to be avoided) turning the fairness hearing into a trial of the merits. For example, the judge could have insisted that the parties present evidence that would enable four possible outcomes to be estimated: call them high, medium, low, and zero. High might be in the billions of dollars, medium in the hundreds of millions, low in the tens of millions. Some approximate range of percentages, reflecting the probability of obtaining each of these outcomes in a trial (more likely a series of trials), might be estimated, and so a ballpark valuation derived.

*Reynolds*, 288 F.3d at 285. According to *Newberg on Class Actions*, § 13.49 (5th ed.), which cites extensively to *Reynolds* and the Seventh Circuit's mathematical approach, the determination of a settlement's value is found by "(1) making a rough estimate of what the class would have received had it prevailed at trial (or at other endpoints) and then (2) discounting that value by the risks that the class would face in securing that outcome."

Here, Class Counsel has access to information, such as recoveries in substantially similar or related litigation through jury verdicts or settlements. Counsel referred to one of these outcomes during the fairness hearing, noting that the jury verdict was not as favorable as the outcome reached in this litigation. To complete the analysis, the Court points Class Counsel to Table I Net Expected Value Methodology—Seventh Circuit Example, *Newberg on Class Actions*, § 13.49 (5th ed.), and directs Class Counsel to provide the Court with useful benchmark information for use in arriving at the net expected value of this litigation. For ease of consideration, values should be calculated on a per hour of over detention basis. Submission of this information will allow the Court to determine if the proposed settlement is within the ballpark of reasonableness.

**2.     *Likely Complexity, Length, and Expense of the Litigation***

The parties submit that "[c]ontinued litigation in this case would most certainly result in an increase in the complexity of the issues to resolve, the duration of the lawsuit, and an increase in the expenses incurred by both parties." (Joint Br. 4, ECF No. 192.) If the Court approves the settlement, the lawsuit will come to an end and Class Members will realize monetary benefits. If the Court does not accept the settlement, the case must proceed to trial. Although the class has

been certified, and liability has already been determined, both the duration of the lawsuit and the expenses would increase. Therefore, this factor weighs in favor of approving the settlement. Counsel need no make any further submissions related to this factor.

3.  *Amount of Opposition to Settlement*

The class contains 243 members. Despite the issuance of Mailed Notices and Publications pertaining to the proposed settlement, there were no objectors. Additionally, only one class member previously opted out. Assuming that due process and the notice requirements of Rule 23 have been satisfied, this factors weighs in favor of approving the settlement.

4.  *Opinion of Competent Counsel*

The "opinion of competent counsel" supports a determination that the settlement is fair, reasonable, and adequate under Rule 23. *Synfuel*, 463 F.3d at 653. Class Counsel is experienced in litigating civil rights actions, including cases involving the same violations set forth in this case. Defense counsel is likewise experienced in defending civil rights actions against governmental entities. Further, the parties submit that the settlement was finalized only after extensive arm's-length negotiations. However, to further support a finding that the settlement fair, reasonable, and adequate, the Court requests that Class Counsel provide additional, non-privileged information regarding the negotiating process, such as who participated in the settlement negotiations, at what stage negotiations began, and over what period of time the parties negotiated.

**5.**     *Stage of the Proceedings and Amount of Discovery Completed*

The final consideration, "the stage of the proceedings and the amount of discovery completed at the time of settlement" *Synfuel*, 463 F.3d at 653, is a relevant factor because it determines how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims, and demonstrates that the parties have litigated the case in an adversarial manner. *See Newberg on Class Actions* § 13.50 (5th ed.).

Here, the settlement occurred only after a contested determination of liability and class certification. Moreover, Class Counsel conducted an investigation into the law enforcement records in Whitley County, including all arrest records made available from the agencies that placed people in the Whitley County Jail, as well as Jail Booking sheets, jail prisoner spread sheets, transport sheets, and CCS summaries. Counsel also analyzed appropriate materials to determine the length of over detention of each class member. The Court then issued a ruling on a contested issue concerning how to calculate the compensable time of unlawful over detention. The maturity of the underlying substantive issues weighs in favor of approving the settlement. Counsel need not submit any further materials related to this factor.

**C.     Attorneys' Fees and Incentive Awards**

**1.**     *Attorneys' Fees*

Once a settlement has been reached in a class action, class counsel can petition the court for compensation from the settlement or common fund that was created for the class's benefit. This payment scheme, which is an exception to the American Rule, "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*,

504 F.3d 688, 691 (7th Cir. 2007). Here, Class Counsel's Verified Petition for Award of Fees and Costs [ECF No. 201], and Brief in Support [ECF No. 202], request fees in the amount of $320,000 plus costs to be paid out of the common fund. At the fairness hearing, counsel indicated that fees would likely be around $325,000 by the end of the case.

Paragraph 28 of the Settlement Agreement provides that "Class Counsel shall receive from the Settlement Fund the amount of attorneys' fees and costs approved by the Court, but in no even more than $317,000 plus costs." (ECF No. 191-2.) Likewise, paragraph 21(d) indicates that Class Counsel will seek a total award of actual hourly attorney's fees in excess of approximately $316,000, which was based on fees already incurred and an estimate of the additional fees that would be incurred to the conclusion of the suit. The Class and Settlement Notice provided to Class Members advised that the Settlement provided for "[a]n award of attorney's fees in an amount of $317,000.00 plus costs not to exceed $20,000.00." (ECF No. 191-5.)

In deciding an appropriate fee in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton*, 504 F.3d at 692 (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) (finding that in common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case"). "Although is it impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such

10

as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). "[T]he market price for legal fees 'depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.'" *Sutton*, 504 F.3d at 693 (quoting *Synthroid*, 264 F.3d at 721).

Class Counsel appears to base its fee request on the lodestar method, and asserts that the amount will reach $325,000. In support of the reasonableness of its fee request, Class Counsel submits its contract with the Named Plaintiff, in which he agreed to pay the greater of 40% of the recovery or the actual lodestar. However, the Settlement Agreement refers to an amount not to exceed $317,000. The Court, in its discretion, will apply the percentage method to determine Class Counsel's reasonable fee. *See Americana Art China Co. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) (stating that courts can choose the lodestar method or the percentage method); *Florin v. Nationwide of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994).

The Court notes that a fee of $317,000 represents 43.7% of the $175,000 settlement. This is consistent with what counsel would have received under a 40% contingency fee arrangement, which also aligns with the market rate for such cases. (Decl. of Theodore Eisenberg § IV, ECF No. 201-4.) The Court finds that requested fee is reasonable based on the risk of nonpayment Class Counsel agreed to bear. Civil rights litigation against government entities is, in general, risky. This is weighed against the fact that this litigation involved an established area of constitutional law regarding the permissible length of detentions following a warrantless arrest.

Existing Supreme Court case law supported the Plaintiff's claims, even at the outset of the litigation. Counsel notes that there was no guarantee of liability in this case, as the Defendant defended the litigation on grounds that the operative unconstitutional policy was caused by others. The Court finds that while the legal theory was not novel, or particularly complex, it was not without risk to challenge a governmental practice. Additionally, the amount of recovery, even after establishing liability, is also highly uncertain in this type of litigation, and is not as eagerly sought after by litigators. The Court also considers that counsel would have been aware when it accepted the case that the nature of the class could potential contribute to delay in the case and, correspondently, to delay in receipt of payment for services. Despite these risks, Class Counsel undertook the work necessary to identify the class, certify the class, obtain a judgment on liability, and resolve the litigation favorably to the Class. Accordingly, the Court finds that a nearly 44% contingency would award Class Counsel the market price for its legal services.

The Court GRANTS Class Counsel's Verified Petition for Award of Fees and Costs [ECF No. 201], by awarding fees in the amount of $317,000. This amount will be reflected in the Court's final order. Any additional fee request in this case will succeed only if Class Counsel demonstrates that an additional amount would align with what would have resulted from arm's-length bargaining *ex ante*. Further, Class Counsel would have to persuade the Court that it should receive more than what was bargained for in the Settlement Agreement and noticed to Class Members. As the Court does not have an up-to-day request for costs incurred in this litigation, it will defer granting an award of costs until it has reviewed materials submitted in conjunction with a motion for final approval.

## 2. *Incentive Award*

Class Counsel requests that the Court award Bickel an incentive award not to exceed $10,000 from the common fund. "Incentive awards are justified when necessary to induce individuals to become named representatives." *Synthroid*, 264 F.3d at 722; *see also Cook v. Niedart*, 142 F.3d 1004, 1016 (7th Cir. 1998). Bickel was required over the course of the last six years to be available to pursue the litigation, communicate with counsel, and participate in settlement discussions. His lawsuit was the first class action among numerous challenging Sheriff Department detention practices throughout the northen district of Indiana. Bickel decided to move away from the community that has been impacted by his litigation. The Court also considers that, even if Bickel was successful after this protracted litigation, the award was not likely to include significant monetary benefit. The Court finds that an incentive award of $10,000 is appropriate and requires no further submissions on the matter.

## D. Dismissal of the Action

According to the settlement documents, the parties anticipate that the Court will dismiss this case with prejudice and enter final judgment, but retain jurisdiction solely for the purpose of enforcing the terms of the Settlement Agreement. But a district judge cannot dismiss a suit with prejudice, thus terminating federal jurisdiction, yet at the same time retain jurisdiction to enforce the parties' settlement that led to the dismissal with prejudice. *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006); *see also Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002). Accordingly, when the Court issues final order and dismisses this suit with prejudice, any disputes regarding enforcement of the Settlement Agreement will be enforced just like any other

13

contract. The parties' proposed Final Order of Approval of Settlement will be modified accordingly.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Class Counsel's Verified Petition for Award of Fees and Costs [ECF No. 201], by awarding fees in the amount of $317,000. The parties are to file additional submissions as was directed by the Court at the fairness hearing and through this Opinion and Order, and in accordance with any previously set deadlines.

SO ORDERED on March 26, 2015.

                                                    s/ Theresa L. Springmann
                                                    THERESA L. SPRINGMANN
                                                    UNITED STATES DISTRICT COURT
                                                    FORT WAYNE DIVISION