UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| LAWRENCE M. BICKEL, on behalf of himself and others similarly situated, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:08-CV-102-TLS |
| SHERIFF OF WHITLEY COUNTY (in his official capacity), | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Class Action Release and Settlement Agreement entered into between the named Plaintiff, Lawrence Bickel, on behalf of himself and the Settlement Class, and the Defendant, Whitley County Sheriff. For the reasons stated herein, the Court finds that the class action Settlement is fair, reasonable, and adequate.

**BACKGROUND**

The Plaintiff, Lawrence M. Bickel, on behalf of himself and others similarly situated, sued the Sheriff of Whitley County in his official capacity pursuant to 42 U.S.C. § 1983. The Plaintiff alleged that the Sheriff engaged in a practice, procedure, or custom related to confinement at the Whitley County Jail that deprived him and others of their Fourth Amendment right to a probable cause determination within forty-eight hours of being arrested and detained without a warrant. The claim was based on the holdings in *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) (holding that the Fourth Amendment affords persons who are arrested without a warrant the right to a prompt judicial determination of probable cause "as a prerequisite to extended

restraint of liberty following arrest") and *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding that a "jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest, will, as a general matter, comply with the promptness requirement of *Gerstein*").

On March 26, 2010, the Court granted the Plaintiff partial summary judgment, determining that the Defendant's policy violated the Fourth Amendment as a matter of law. Additionally, the Court certified a class under Rule 23(b)(3), defined as all persons who were arrested without a warrant from March 30, 2006, to present, and detained in the Whitley County Jail for more than forty-eight hours from the time of their arrest without a judicial determination that probable cause existed to continue to detain them. The Court determined that the class could seek damages for unconstitutional detentions in the Whitley County Jail that resulted from the Sheriff's confinement policy.

The named Plaintiff, Bickel, on behalf of himself and the Settlement Class, and the Defendant, Whitley County Sheriff, entered into a Class Action Release and Settlement Agreement. The Settlement requires the Defendant to pay $725,000 into a settlement fund to cover administration and notice costs, attorney's fees and costs, the Named Plaintiff's incentive award, and class members' claims payments. The Defendant was credited $3,335.85 for a previous payment for costs of publication of the class notice, leaving a total of $721,664.15 for the Defendant to pay into the settlement fund. After reducing the fund to pay for sending the mailed notice and administering the fund, paying an incentive award not to exceed $10,000, and paying attorneys' fees of no more than $317,000 plus costs, the remaining settlement funds would be distributed to the Settlement Class Members, defined as

> All individuals arrested without a warrant from March 30, 2006 through December 31, 2009, and who were booked and/or placed into the Whitley County Jail, and who were not brought before a judicial officer within forty-eight (48) hours after their arrest for a judicial probable cause hearing, and who were detained by the Whitley County Sheriff in excess of forty-eight (48) hours after their arrest.

(Settlement Agr. ¶ 9.a, ECF No. 191-2.) One person opted out of the class. The Settlement Class was divided into two groups: (I) Bickel and other class members for loss of liberty, and; (II) the seven individuals who submitted a claim form for emotional distress, mental anguish, loss of employment or wages, or other special damages.[1] The anticipated recovery for the members of Settlement Class I is about $43.00 per hour of over detention. The members of Settlement Class II would have an opportunity to identify and substantiate injuries and damages to a special master.

The Court preliminarily approved the Settlement on November 3, 2014. The Court confirmed Christopher C. Myers and Ilene M. Smith as Class Counsel for the Class Representative and the Class. The Court approved Homefront Legal Services, LLC, 11805 North Pennsylvania Street, Carmel, Indiana, as the Claims Administrator.

The Court conducted a Fairness Hearing on Wednesday, March 18, 2015, to consider: (i) the fairness, reasonableness, and adequacy of the settlement; (ii) whether the Final Order of Approval of Settlement, attached as Exhibit E to the Settlement Agreement, shall be entered in its current or some modified form; and (iii) the application of Class Counsel for attorney's fees and costs (the Fee Petition).

---

[1] Later, it was clarified that nine individuals have been identified as submitting claim forms for special damages [ECF No. 226].

# DISCUSSION

**A.     Notice**

Rule 23 requires that the Class Members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Reasonable notice is required to all class members who would be bound by a proposed settlement. Fed. R. Civ. P. 23(e)(1).

The Class contains 237 individuals. A Class and Settlement Notice was mailed to the last known address of each individual, as listed in the Whitley County arrest records. Prior to mailing, the Claims Administrator attempted to find updated addresses and to verify the accuracy of the addresses of all potential Settlement Class Members. If, as a result of the mailing, the Postal Service provided a forwarding address, but the Mailed Notice was not forwarded by the Postal Service, the Claims Administrator re-mailed the Mailed Notice to the forwarding address. If the Mailed Notice was returned as undeliverable a second time, no further mailing was attempted. The Claims Administrator also issued a Published Notice in *The Post & Mail*, a newspaper serving the Whitley County area.

The procedure implemented by the plan administrator was appropriate. *See Jones v. Flowers*, 547 U.S. 220, 234–35 (2006) (stating that the plan for providing notice should involve steps to update addresses before mailing and provide for re-mailing notices to better addresses when returned as undeliverable). According to the Plaintiff, as of September 28, 2015, the Notices were undeliverable for 32% of the Class Members, with one of those Notices being returned because the Class Member was deceased. However, counsel is in the process of researching records obtained in this case and/or available through doxpop.com, in an effort to

locate dates of birth, social security numbers and/or more recent address information for the individuals whose Notices have been returned undeliverable. (Pl.'s Second Supplementation of the R. 3, ECF No. 222.) Plaintiff's counsel continues to work with Homefront Legal Services to obtain additional identifying information to assist with efforts to locate Class Members not yet served mailed notices. In addition, the newspaper that published the Notice is circulated in the area where most Class Members lived at the time of their over-detention.

The Court finds that due process and the notice requirements of Rule 23 have been satisfied. In addition, the Defendant has complied with the notification requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

B.     **Adequacy of the Settlement Agreement**

A district court must scrutinize and evaluate a class action settlement to determine whether it is "fair, reasonable, and adequate." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2)). In making these determinations, the court considers five factors: (1) the strength of plaintiffs' case compared to the defendants' offered settlement amount; (2) the likely complexity, length, and expense of the litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In considering the strength of the Plaintiff's case, the court is to quantify "the net expected value of continued litigation to the class by estimating the range of possible outcomes." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346–47 (N.D. Ill. 2010);

*Synfuel*, 463 F.3d at 653. Liability has already been established. However, assigning a monetary amount to loss of liberty, and calculating emotional distress and special damages, is extremely subjective. The parties also recognize the range of possible outcomes includes a number of highly unfavorable outcomes. In estimating the range of possible outcomes and ascribing a probability to each point on the range, it has been recognized that a high degree of precision cannot be expected in valuing a litigation; nevertheless, the parties must present evidence that would enable the possible outcomes to be estimated so that the court can at least come up with a ballpark valuation. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002); *see also Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014) (stating that the district court should have estimated the likely outcome of a trial in order to evaluate the adequacy of the settlement).

> A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes. Still, much more could have been done here without (what is obviously to be avoided) turning the fairness hearing into a trial of the merits. For example, the judge could have insisted that the parties present evidence that would enable four possible outcomes to be estimated: call them high, medium, low, and zero. High might be in the billions of dollars, medium in the hundreds of millions, low in the tens of millions. Some approximate range of percentages, reflecting the probability of obtaining each of these outcomes in a trial (more likely a series of trials), might be estimated, and so a ballpark valuation derived.

*Reynolds*, 288 F.3d at 285. According to *Newberg on Class Actions*, which cites extensively to *Reynolds* and the Seventh Circuit's mathematical approach, the determination of a settlement's value is found by "(1) making a rough estimate of what the class would have received had it prevailed at trial (or at other endpoints) and then (2) discounting that value by the risks that the class would face in securing that outcome." William B. Rubenstein, *Newberg on Class Actions*, § 13.49 (5th ed. 2011).

Based on recoveries achieved through jury verdicts or settlements in thirteen substantially similar or related cases (Pl.'s Suppl. 2, ECF No. 206), the range of possible outcomes is from $1.00 per hour of over detention and $75.00. The probabilities for the range of outcomes is estimated as follows:

• $10.00 per hour of over detention or less: 25%;

• $25.00 per hour of over detention:25%;

• $40.00 per hour of over detention:25%;

• $50.00 per hour of over detention:20%;

• $75.00 per hour of over detention:5%.

Multiplying these amounts, and adding them together, yields a net expected value of $32.50 per hour of over detention.[2] The proposed Settlement in this case would provide each class member with about $43.00 per hour of over detention for general loss of liberty claims. Accordingly, the strength of Plaintiffs' case compared to the Defendant's offered settlement amount weighs in favor of finding that the Settlement is fair, reasonable, and adequate.

Second, the likely complexity, length, and expense of the litigation weighs in favor of approving the Settlement. The parties submit that "[c]ontinued litigation in this case would most certainly result in an increase in the complexity of the issues to resolve, the duration of the lawsuit, and an increase in the expenses incurred by both parties." (Joint Br. 4, ECF No. 192.) If

---

[2]  $75.00 x .05 = $3.75
$50.00 x .20 = $10.00
$40.00 x .25 = $10.00
$25.00 x .25 = $6.25
$10.00 x .25 = $2.50

$3.75 + $10.00 + $10.00 + $6.25 + $2.50 = $32.50

the Court approves the Settlement, the lawsuit will come to an end and Class Members will realize monetary benefits. If the Court does not accept the Settlement, the case must proceed to trial and the presentation of evidence from various witnesses and sources. Class Counsel would have to accrue significant fees related to witness preparation, pretrial conferences, trial plans, pretrial motions, and participation in the trial itself. Although the class has been certified, and liability has already been determined, both the duration of the lawsuit and the expenses would certainly increase.

Third, the limited opposition to the Settlement Agreement among affected parties, *Synfuel*, 463 F.3d at 653, also favors settlement. In fact, none of the 237 class members filed an objection to the Settlement, and only one person previously opted out of the class.

Fourth, the "opinion of competent counsel" supports a determination that the Settlement is fair, reasonable, and adequate under Rule 23. *Id.* Class Counsel is experienced in litigating civil rights actions, including cases involving the same violations set forth in this case. Defense counsel is likewise experienced in defending civil rights actions against governmental entities. Further, the parties submit that the Settlement was finalized only after extensive arm's-length negotiations, which included a judicial settlement conference with the magistrate judge and informal settlement negotiations. (Pl.'s Second Suppl. 5–6.) Additionally, settlement was not achieved until after the resolution of numerous factual and legal disputes.

The final consideration, "the stage of the proceedings and the amount of discovery completed at the time of settlement" *Synfuel*, 463 F.3d at 653, is a relevant factor because it determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims," *Armstrong v. Bd. of Sch. Dirs. ov City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980),

overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Here, the settlement occurred only after a contested determination of liability and class certification. Moreover, Class Counsel conducted an investigation into the law enforcement records in Whitley County, including all arrest records made available from the agencies that placed people in the Whitley County Jail, as well as Jail Booking sheets, jail prisoner spread sheets, transport sheets, and CCS summaries. Counsel also analyzed appropriate materials to determine the length of over detention of each class member. The Court then issued a ruling on a contested issue concerning how to calculate the compensable time of unlawful over detention. With the merits of the constitutional claims already determined, the class members identified, and the length of over detention calculated, this factor weighs in favor of approving the settlement.

**C.     Attorney's Fees and Incentive Awards**

In an Opinion and Order issued on March 26, 2015 [ECF No. 205], the Court provisionally approved the Settlement Agreement, and granted Class Counsel's Verified Petition for Award of Fees and Costs in the amount of $317,000 plus costs. For reasons explained in that Opinion and Order, that amount is reasonable in this common fund case. In the March 26 Opinion and Order, the Court also explained why an incentive award of $10,000 for the Named Plaintiff was appropriate. The Court need not reiterate that discussion here.

On October 14, 2015, Plaintiff's counsel filed a Second Petition for Award of Fees and Costs [ECF No. 224]. Counsel requests that the Court grant payment of attorney's fees in the amount of $28,817.50 and costs in the amount of $2,569.99 for work performed from November 6, 2014, through September 30, 2015. Counsel acknowledges that the Court previously awarded

9

fees, but submits that this award only compensated counsel for litigation fees and costs incurred up through November 5, 2014, and additional fees have been incurred since that time.

This class action was settled pursuant to a Class Action Release and Settlement Agreement entered into between the Named Plaintiff, Lawrence Bickel, on behalf of himself and the Settlement Class, and the Defendant, Whitley County Sheriff. That Settlement requires the Defendant to pay $725,000 into a settlement fund to cover administration and notice costs, attorneys' fees and costs, the Named Plaintiff's incentive award, and claims payments. A provision in the Settlement Agreement addresses attorney's fees:

> Attorneys' Fee Award. Class Counsel's attorneys' fees, costs, and expenses will be paid out of the Settlement Fund. Class Counsel has petitioned for an Interim Award of Fees and Costs. Class Counsel shall seek a total award of actual hourly attorneys' fees **in excess of approximately $316,000.00 plus costs and expenses**. (Current attorney fees are approximately $297,000.00 as of September 11, 2014; it is estimated that to the conclusion of the suit, approximately an additional $20,000.00 in fees will be incurred.) The final determination of the Attorneys' Fee Award will be decided by the Court. The Attorneys' Fee Award will be disbursed to Class Counsel from the Settlement Fund upon approval by the Court. Payment of the Attorneys' Fee Award is to be made within five (5) days of the issuance of the Final Approval Order.

(Settlement Agreement ¶ 21.d, ECF No. 191-2) (emphasis added). A separate paragraph provided:

> Class Counsel will petition the Court for an order awarding attorneys' fees in an amount of actual hourly fees **of approximately $317,000.00 plus costs**. Class Counsel has petitioned for an Interim Award of Fees and Costs which was denied. The terms of this Agreement are not conditioned upon any minimum or maximum Attorneys' Fees Award, or upon the payment of any Incentive Award or claims payment to any Named Plaintiff. Defendant, the Named Plaintiffs, and Class Counsel agree that the total payment of $725,000.00 is fair and adequate. The Named Plaintiff and Class Counsel do not condition their willingness to enter into, or perform under, this Settlement Agreement on any agreement or accord regarding the attorneys' fees or costs of Class Counsel, or the Named Plaintiff's Incentive Award. Class Counsel agrees that what the Court determines to be the Attorneys' Fee Award are the full fees and costs for this litigation and will not

seek any further amount from Class Members. Class Counsel shall receive from the Settlement Fund the amount of attorneys' fees and costs approved by the Court, **but in no event more than $317,000.00 plus costs**, by the due dates provided herein. If costs exceed the estimated amount of $25,000.00, then the amount of damages paid to the Class Members will be adjusted accordingly. Such fees and costs are inclusive of all efforts heretofore and hereinafter expended by Class Counsel and any other attorneys acting on behalf of the Named Plaintiffs and Settlement Class, up to and including the execution of this Settlement Agreement, and further include all services to be performed by Class Counsel in effectuating this Settlement Agreement.

(Settlement Agreement ¶ 28) (emphasis added). The Class and Settlement Notice, which was attached as an exhibit to the Settlement Agreement, informed class members that the settlement provided for a $725,000 payment, from which various awards would be made, including an award of attorney's fees. Specifically, "[a]n award of attorney's fees in an amount of $317,000.00 plus costs not to exceed $20,000.00. (Class Counsel will seek the actual costs of litigation, including the costs of this notice, and of the administration of the class, and of litigating the case before settlement.)." (Notice ¶ 7, ECF No. 191-5.) A Notice containing this exact language was mailed to class members and published in a local newspaper throughout December 2014. (Proof of Mailed Notice and Publication, ECF No. 203.)

As stated earlier, on March 26, 2015, the Court granted Class Counsel's Verified Petition for Award of Fees and Costs [ECF No. 201], by awarding fees in the amount of $317,000. (Opinion and Order, ECF No. 205.) In doing so, the Court, in its discretion, applied the percentage method to determine Class Counsel's reasonable fee. *See Americana Art China Co. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) (stating that courts can choose the lodestar method or the percentage method); *Florin v. Nationwide of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). The Court concluded that a fee of $317,000, which represented 43.7% of the $175,000 settlement, was consistent with what counsel would have received under

a 40% contingency fee arrangement, which also aligned with the market rate for such cases.

> The Court finds that requested fee is reasonable based on the risk of nonpaymentClass Counsel agreed to bear. Civil rights litigation against government entities is, in general, risky. This is weighed against the fact that this litigation involved an established area of constitutional law regarding the permissible length of detentions following a warrantless arrest. Existing Supreme Court case law supported the Plaintiff's claims, even at the outset of the litigation. Counsel notes that there was no guarantee of liability in this case, as the Defendant defended the litigation on grounds that the operative unconstitutional policy was caused by others. The Court finds that while the legal theory was not novel, or particularly complex, it was not without risk to challenge a governmental practice. Additionally, the amount of recovery, even after establishing liability, is also highly uncertain in this type of litigation, and is not as eagerly sought after by litigators. The Court also considers that counsel would have been aware when it accepted the case that the nature of the class could potential contribute to delay in the case and, correspondently, to delay in receipt of payment for services. Despite these risks, Class Counsel undertook the work necessary to identify the class, certify the class, obtain a judgment on liability, and resolve the litigation favorably to the Class. Accordingly, the Court finds that a nearly 44% contingency would award Class Counsel the market price for its legal services.

(Opinion and Order at 11–12.) The Court went on to advise that "[a]ny additional fee request in this case will succeed only if Class Counsel demonstrates that an additional amount would align with what would have resulted from arm's-length bargaining *ex ante*. Further, Class Counsel would have to persuade the Court that it should receive more than what was bargained for in the Settlement Agreement and noticed to Class Members." (*Id.* at 12.)

In support of the Second Petition for Interim Award of Fees and Costs, counsel sets forth a lodestar figure of $31,387. Counsel argues that this amount is reasonable, and would have been charged to a fee paying client engaged in similar litigation. Counsel indicates that it will file a subsequent and final fee petition seeking additional fees and costs for time expended through the conclusion of this matter. Counsel does not address the fee amount that was identified in the Settlement Agreement or the Notice to Class Members.

This case has been litigated under a statute that contains a fee shifting provision—a party who prevails in a civil rights action is entitled to recover reasonable attorney's fees. 42 U.S.C. § 1988(b); *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). But common fund principles properly control a case that has been initiated under a statute with a fee-shifting provision, and then settled with the creation of a common fund. *Florin*, 34 F.3d at 564. Counsel has not indicated that the fee shifting statute, apart from the settlement fund, is the impetus for their additional fee request. Nor could they. The attorney's fees in this case could only come from the common fund, as, per the parties' Agreement, the amount of money the Defendant is putting into the settlement pot is fixed. A recent Seventh Circuit case, *Pierce v. Visteon Corp.*, 791 F.3d 782 (7th Cir. 2015), does not lend support to counsel's request. In *Pierce*, the district court awarded class counsel reasonable fees under ERISA's fee shifting statute as the prevailing party. *See* 29 U.S.C. § 1132(g)(1). Counsel then requested additional fees by analogizing the case to common fund cases. 791 F.3d at 786. The Court denied his request, holding that "clients should not be ordered to pay counsel who are compensated under a fee-shifting statute." *Id.* at 787. Here, Class Counsel was not compensated under a fee-shifting statute, but was paid out of the common fund. The clients have already been ordered to pay counsel from that fund.

The current request, when added to the $317,000 already awarded, would elevate the attorney's fees to 48% of the common fund. Counsel does not indicate what the final fee petition might be, but if it is an additional $20,000, attorney's fees would account for more than 50% of the fund. Counsel has not presented any data, empirical or otherwise, to support such an award. Nor is there any mechanism in place for class members receive notice of the latest request and object to it. *See Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 959 (7th Cir. 2013) ("A

district judge, looking out for the interests of all class members, sometimes must consider issues that the class representatives and their lawyers prefer to let pass."); *In re GM Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 819–20 (3d Cir. 1995) (requiring "a thorough judicial review of fee applications . . . in all class action settlements" because "'a defendant is interested only in disposing of the total claim asserted against it'" and "'the allocation between the class payment and the attorneys' fees is of little or no interest to the defense'") (quoting *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015, 1020 (3d Cir. 1977)).

With regard to costs, the settlement agreement calls for the payment of certain costs, including those of Class Counsel, the claims administrator, and the Special Master. The parties have estimated that the costs of the claims administrator will be between $4,552 and $7,500. Total costs are estimated to be $25,000. Considering that there were no objections to the award of these projected fees or costs, the Court finds that the estimated costs are reasonable and necessary to the successful prosecution of this case. *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

In the latest motion for fees, counsel seeks $2,569.99 in costs. The Court will award this amount, and will award any additional amounts that counsel supports with proper documentation.

### D. Special Master

The Court has appointed Scott L. Bunnell as Special Master to make determinations regarding the amount of damages to be awarded to those class members in the special damages

sub-class. The Special Master shall be compensated at a rate of $200 per hour, to be paid from the settlement fund. Upon completion of his duties, the Special Master shall file a request for compensation for Court approval. Consistent with the stipulation of the parties and Rule 53(f)(3)(B), the factual findings of the Special Master shall be final. Pursuant to Rule 53(f)(4), the Court retains the authority to decide de novo all objections relative to the conclusions of law made or recommended by the Special Master.

## CONCLUSION

For the reasons set forth above, the Court finds that the class action Settlement is fair, reasonable, and adequate. The Court DIRECTS the Defendant to deposit with the Class Counsel to be held in trust, within 45 days of this Order, $ 725,000 less any administrative costs and attorney's fees already paid by the Defendant. A Final Approval Order will be issued consistent with this Opinion and Order and with the Settlement Agreement. The parties are directed to comply with the terms of the Settlement Agreement, and to file a joint status report sixty days after today's date, and then once every six months until the settlement is completed and the settlement fund account is closed. The Court will retain jurisdiction and oversight of the settlement proceedings, but only until such time as the parties jointly request an order of dismissal with prejudice. The Court DENIES IN PART AND GRANTS IN PART Plaintiffs' Counsel's Second Petition for Award of Fees and Costs [ECF No. 224]. Class Counsel is awarded $2,569.99 in costs, with additional amounts to be awarded upon further motion to the Court.

SO ORDERED on January 4, 2016.

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT